## No. 9789.

### R. R. BARROW ET AL. VS. MRS. M. WILSON ET AL.

Emancipation by marriage does not terminate the suspension of prescription as to minors, which continues until the actual majority of such minor. Plea of prescription of ten years overruled.

As to the property purchased at tax sale, the prescription of three years is pleaded under section 5 of Act 105 of 1874, which declares: "Any action to invalidate the titles to any property purchased at tax sale under and by virtue of any law of this State, shall be prescribed by the lapse of three years from the date of such sale."

This statute has never been repealed. Being a statute of prescription it is legitimately retrospective, and operates on tax sales made prior to its passage, at least from the date of the law.

Section 62 of Act 42 of 1861, under which this sale was made, providing for obtaining an Auditor's deed of sale, does not impair the effectiveness of the tax collector's deed as a title.

The section 5 of the Act 105 of 1874 is distinctly a prescription of an action. It does not purport to cure defects in titles; nor does it concern itself with the rights of parties. It simply says, whatever be the rights, they must be asserted within three years or else the action is barred.

The power of the legislature to pass such laws is undisputed and the courts are bound to enforce them.

In this case, defendants have a title derived from a tax sale made under a law of the State, under which they have held open, public and notorious possession for thirteen years

| | |
|---|---|
| 39 | 403 |
| 43 | 791 |
| 45 | 492 |
| 39 | 403 |
| 47 | 795 |
| 47 | 1563 |
| 47 | 1608 |
| 39 | 403 |
| 48 | 53 |
| 48 | 347 |
| 39 | 403 |
| 50 | 38 |
| 50 | 40 |
| 51 | 644 |
| 51 | 673 |
| 51 | 1635 |
| 39 | 403 |
| 107 | 596 |
| e107 | 600 |
| 39 | 403 |
| 108 | 13 |
| 39 | 403 |
| 118 | 97 |

Barrow et al. vs. Wilson et al.

and for more than three years since plaintiffs reached the age of majority, before this action to invalidate their title was instituted.

The statute is a bar to the action. The question fully considered under numerous authorities: Lague vs. Boagni, 32 Ann. 912, distinguished from the case at bar. Person vs. O'Neal, 32 Ann. 237, overruled.

A PPEAL from the Twenty-fourth District Court, parish of Plaque-mines. *Livaudais*, J.

*E. Howard McCaleb* for Plaintiffs and Appellants :

1. Minority suspends prescription. R. C. C. 3522, 3544.

2. Prescription is suspended against a minor emancipated by marriage until her majority. 33 Ann. 356; Troplong Prescription, T. 2, No. 740; Marcadé Prescription, art. 2252; C N. Bousquet Dict. Pres. Tit. *Mineur* ; Laurent, p. 32, No. 46. But it commences to run against a minor emancipated by judgment of court under article 385, C. C. from the date of the decree. 36 Ann. 250.

3. Even possessors in good faith are liable for fruits and revenues gathered and received since the time of the owner's claim for restitution. R. C. C. 3453, 503.

4. The prescriptions in favor of tax titles established by Act No. 101 of 1873, and 105 of 1874, cannot avail in this case because (1) the former applies *ex vi termini* to "sales made to satisfy judgments for taxes ; (2) these statutes have been repealed by subsequent laws before plaintiffs attained the age of majority ; (Act 96, E. S. 1877 and Act 9, E, S. 1878) ; and (3) the property in dispute was not assessed in the name of the true owner. 32 Ann. 912.

5. The prescription of three and five years only cures informalities—and not radical defects and illegalities in the assessment and sale of property for taxes. 15 Ann. 15; 34 Ann. 107: 32 Ann 228; 34 Ann. 407; 35 Ann. 954.

*Zacharie & Howard* for Defendants and Appellees :

The rules laid down in the Civil Code pertain to the legal relations of the people among themselves, and do not apply to the State in its sovereign capacity, especially in tax matters, unless the code so specially provides. Dropsie's Mackeldy Dw. 1. § 8 ; Justinian 3, § 4 ; Domat. tom. 1, chap. 11, §§ 41, 44 ; Demolombe tom. 1, p. 14 ; Mourlon tom. 1, p. 7, § 10 ; Marcadé tom. 1, p. 24 ; Duranton tom. 1, p. 17.

Under all systems of law prescription cannot be maintained against the sovereign unless it be established by statute. Prescription does not run against laws of public order. Bacon's Abridg. L. 4, 201 ; Justinian, Ins. Lib. 2, tit. 6; Code tit. 38, § 7, 3 ; Pothier, part 3, § 685 ; Troplong Pres., chap. 1, Disp. Jen. § 132, 3 ; Laurent, tom. 32, p. 249 ; Do-mat. chap. 11, No. 40 ; Laurent, tom 1, p. 83, § 48 ; Boileaux, tom. 7, p. 743 ; Laurent, tom. 32, p. 743 ; Moreau & Carelton's Partidas, p. 373, tit. 29, law 6 ; White's Recopilacion, vol. 1, pp. 348, 350.

If this be correct, then none of the interruptions or suspensions of prescription on account of minority or coverture established by the code are of force in suspending prescription running under a tax law.

Under Act No. 42 of 1871, sec. 62, two years possession of real estate, under a tax deed vested title completely and fully, and under sec. 2, Act No. 101 of 1873, under such a deed, after two years the former owner is deemed to have acquiesced, and waived all in-formalities, in the tax sale, and the deed is made conclusive.

But even if it is conceded, for the sake of argument here, that the rules of the Civil Code apply under C. C. art. 543, in case of public sales, and the prescription of five years runs on tax sales, and is not suspended by minority and coverture.

All informalities and irregularities of tax sales arising subsequent to the decree (assess-

ment), are governed by the same rules, and the deeds are placed on the same footing as judicial sales, and are subject to the same rules as sheriff's deeds "in regard to the five years prescription." 30 Ann. 1125; 25 Ann. 237; 29 Ann. 115; 35 Ann. 893; 31 Ann. 662; 34 Ann. 205.

The cases cited contra by our opponent, 10 Ann. 777, 12 Ann. 748, 14 Ann. 209, do not apply here, as they were simply actions of nullity, and the question of prescription was not involved. In 15 Ann. 15, cited by him, there was a glaring error of assessment. So in 33 Ann. 520; 34 Ann. 108: 33 Ann. 913; was a case "in which the gravest irregularities and absolute nullities have been propounded and were known to the party purchasing." 35 Ann. 952 and 34 Ann. 409, were cases of radically defective assessments. In 33 Ann. 873; 23 Ann. 231; 28 Ann. 354; 24 Ann. 454, the question of prescription was not raised.

The possessor in good faith, if evicted, is entitled to be reimbursed the amount expended for taxes, improvements, and interest thereon, and the fruits and revenues are his own until the date of the institution of the suit for eviction. Hen. Dig. p. 1195; 14 Ann. 605; 10 R. 178; 34 Ann. 1163; 35 Ann. 1086; 13 Ann. 494; 2 R. 137; 2 Ann. 347; 26 Ann. 588; 18 Ann. 407; 27 Ann. 398; 32 Ann. 927; 32 Ann. 1293; 34 Ann. 705.

Especially where the land, as in the case at bar, was unimproved, open land, producing no rent, and to which the tax purchasers contributed its only rental value by their improvements and disbursements. 34 Ann. 1163; 2 R. 137; 16 Ann. 414 2 Ann. 347; 18 Ann. 407.

The opinion of the Court was delivered by

FENNER, J.   This case was before us in 1886, when we rendered the opinion and decree reported in 38 Ann. 213.

We then remanded the case for further evidence on the question whether the prescription of ten years pleaded by defendant was defeated by suspension resulting from the minority of plaintiffs.

The record now returns to us with full proof that plaintiff, R. R. Barrow, was fully emancipated in 1876 and became 21 years of age in 1879, and that Mrs. Slatter, the other plaintiff, only attained the age of majority in 1875, though emancipated by marriage in 1871.

This action was instituted in 1884.   It follows that ten years had not elapsed from the majority of either plaintiff, unless the marriage of Mrs. Slatter terminated the suspension of prescription as to her.   The question as to whether the emancipation of a minor by marriage ends the suspension of prescription resulting from minority, does not appear to have been directly decided by this Court.

But the French authorities, under a like provision in the French Code, are quite unanimous in holding that prescription against a minor emancipated by marriage remains suspended until actual majority.   32 Laurent, No. 46; 2 Troplong, Prés., No. 74; Marcadé, Prés., Art. 2252, C. N.

In a recent case, discussing the nature and effect of emancipation by marriage, we said: "Marriage did not relieve her from the disabilities which attach to minors, and did not vest her with the power and right

of doing and performing all acts as validly as if she had attained the age of twenty-one years. She could not mortgage or alienate real estate without the consent of a family meeting and the authority of the judge. Her powers are of administration only." Succ. Mitchell, 33 Ann. 356.

These limitations on the effects of emancipation by marriage are the foundations of the French doctrine that it does not end the suspension of prescription. That doctrine seems to us to be sound and applicable under our law, and we therefore approve and adopt it.

### I.

This terminates the controversy as to the tract of land held by defendants under the State patent, as to which there was no defense having the slightest merit, except the prescription of ten years, which is now overruled.

### II.

The other tract of land is held by defendants under a tax sale made to their author in 1871.   Against the attack in this sale, defendants pleaded the prescription of five and three years, both of which had fully run, after the majority of plaintiffs, before the suit was brought. Art. 3543 C. C., provides: " All informalities connected with or growing out of any public sale made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale, after the lapse of five years from the time of making it, whether against minors, married women or interdicted persons."

Section 5 of Act 105 of 1874 declares : " Any action to invalidate the titles to any property purchased at tax sale under and by virtue of any law of this State, shall be prescribed by the lapse of three years from the date of such sale."

We have thus placed the two provisions side by side, in order to exhibit the broader and more sweeping effect of the latter law. While the article of the Code covers *informalities* only, the act of 1874 creates a positive bar against " any action to invalidate " a tax title.

Fearful that in the labyrinth of laws and decisions, on the subject of taxes and tax titles, there might be some law or decision repealing or modifying the effect of this statute, we took occasion to call the attention of the able and distinguished counsel engaged in this case to the subject, and to invite further argument thereon.

The statute has never been repealed.   The only subsequent enactments pointed to as having such effect are Sec. 57 of Act 96 of 1877 and Sec. 6 of Act 9 of 1878; but, taken in connection with the limited repealing clauses in those acts, it is too clear to require further notice ;

that the sections quoted are not inconsistent with the statute, and, therefore, do not operate its repeal.

It is claimed, however, that under Section 62 of Act 42 of 1871, under which this sale was made, the deed of sale from the tax collector could not operate as a basis of prescription, but was a mere inchoate title until perfected by a deed of sale issued by the Auditor of Public Accounts as therein provided. The mere reading of the section makes it obvious that the procuring of the Auditor's deed is a matter purely optional with the purchaser, conferring, perhaps, some additional rights, but the omission of which, in no manner, invalidates the tax collector's deed as a muniment of title. We, therefore, find that the statute continues in force.

There is no question of the legislative power to pass such a statute, and, being a statute of prescription, it is legitimately retrospective and operates on the title of defendants, at least from the date of the law. DeArmas vs. DeArmas, 3 Ann. 526; 3 Municipality vs. Ursuline Nuns, 2 Ann. 611; Municipality vs. Wheeler, 10 Ann. 745.

It now becomes our duty to ascertain the effect of such a statute upon the rights of parties under such sales. This is distinctly a statute of prescription. It operates not upon the rights of the parties. It does not purport to validate a title which, otherwise, would be invalid. It simply limits the time within which the owner of the original title shall be allowed to assert his rights against the purchaser at a tax sale.

Mr. Blackwell well says: "There must be a period fixed by positive law, within which a right shall be prosecuted in courts of justice. Public policy demands the enactment of such laws, and they are universally sanctioned by the practice of nations and the consent of mankind. Such laws have been emphatically and justly denominated statutes of repose. The best interests of society require that causes of action should not be deferred an unreasonable length of time. This remark is peculiarly applicable to land titles." Blackwell Tax Titles, p. 643.

Cooley says: "The statutes limiting a short time within which the owner of the original title shall contest the tax claim are supposed to be enacted in pursuance of a sovereign authority vested in the Legislature to fix a reasonable time within which a party shall be allowed to assert his rights by suit, or be debarred. The policy of such laws is unquestionable, and the power to enact them is undisputed." Cooley on Tax, p. 376.

The Supreme Court of the United States has said: "Prescription is

a thing of policy, growing out of the experience of its necessity; and the time after which suits or actions shall be barred, has been, from a remote antiquity, fixed by every nation, in virtue of that sovereignty by which it exercises its legislation over all persons and property within its jurisdiction." McElmoyle vs. Cohen, 13 Peters, 312.

A statute of the State of Arkansas provided that: "All actions against the purchaser, his heirs or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, shall be brought within five years after the date of such sale, and not after."

In passing on the effect of this statute, the Supreme Court of the United States said: "In order to entitle the defendant to set up the bar of this statute, after five years' adverse possession, he had only to show that he and those under whom he claimed, held under a deed from a collector of the revenue of lands sold for the non-payment of taxes. He was not bound to know that all the requisitions of the law had been complied with, in order to make the deed a valid and indefeasible conveyance of the title. If the Court should require such proof, before a defendant could have the benefit of this law, it would require him to show that he had no need of the protection of the statute, before he could be entitled to it. Such a construction would annul the act altogether, which was evidently intended to save the defendant from the difficulty, after such a length of time, of showing the validity of his tax title." Pillow vs. Roberts, 13 How. 472.

A Wisconsin statute provided that any suit or proceeding for the recovery of land sold for taxes, except in cases where the taxes have been paid or the lands redeemed, as provided by law, shall be commenced within three years from the time of recording the tax deed of sale, and not thereafter. Under this statute, the Supreme Court of that State held that if the tax purchaser's possession had been actual and open, the statute would protect him, even if his tax deed was void upon its face." Lindsay vs. Fay, 25 Wis., 460.

A Pennsylvania statute provided that no action for the recovery of lands sold under the act should lie unless brought within five years after the sale. The Supreme Court of the State refused to apply the statute literally, and held that it began to run, not from the sale, but from the time of possession under it, for the reason that the owner was not allowed to bring ejectment against one not in possession. But a subsequent statute having been passed, authorizing ejectment in such case, it was held that the limitation was perfect after the lapse of five years from the delivery of the deed to the purchaser." Stewart vs.

Trever, 56 Penn. St. 385; Rogers vs. Johnston, 67 id. 48; Johnston vs. Jackson, 70 id. 164.

Now, in the case before us, the defendants have held since 1871, under tax title, perfectly valid on its face, reciting that the tax collector, in making it, acted "by virtue of the authority vested in him by Act 42 of 1871, after having fulfilled and complied with all the previous legal requisites." The land, when sold, was unimproved; and the purchasers have not only had possession of it, but have cleared and cultivated and converted it into a plantation. And now, thirteen years after the sale, and more than three years after the plaintiffs had been freed from all the disabilities of minority, the latter brings this action to invalidate their title. The defendants simply say: "We hold a title to this property, purchased at a tax sale under a law of the State, and, in the language of the statute, your "action to invalidate" it is "prescribed by the lapse of three years from the date of such sale." The statute does not concern itself with the strength of one title or the weakness of the other. The plaintiffs had a right which could only be enforced by an action. The law maker had the power to fix a reasonable time within which such action should be brought, under penalty of its being thereafter barred by prescription. That power has been exercised, and when the time fixed has expired the courts are bound to enforce the limitation, and to deny the action.

Under the authorities which we have quoted, the foregoing conclusion seems sufficiently clear.

In the case of Lague vs. Boagni, 32 Ann. 912, we refused to apply this prescription to the particular case therein mentioned, which was one where the property of *Lague* had been assessed in the name of *Nunez*, where Lague's title was spread on the public records of the parish, and where the purchasers were shown to have known of these defects. No such radical defect exist in the assessment in the instant case. The property had belonged to H. L. Hunley, a nonresident of the parish, and the parish records exhibited no translation of his title. The assessment was made in the name of H. L. Handley, which variance is cured by the principle of *idem sonans*, as being a mistake not liable to mislead. Burroughs Tax. p. 203; 37 N. H. 307; 39 Barb. 479; 40 N. J. Law 269; Desty on Tax. 613.

Moreover, it does not appear, in the case of Lague vs. Boagni, that the purchaser had actual and open possession for the requisite period. When such possession is shown, it puts the original owner under notice of the necessity of bringing his action, and if he fail to bring it within the time prescribed, the bar of the statue applies.

We are also referred to the case of Person vs. O'Neal, 32 Ann. 237, where the Court said, in commenting on this statute: " Whatever defects in a tax-sale may be cured by the lapse of three years, the want of personal notice to the owner, or his agent or curator, cannot be, because such notice is a condition precedent to the seizure, without which there could be no sale." We are compelled to overrule this decision.

It is in direct conflict with a former decision, which held that even under Art. 3543 C. C., want of such notice was a relative nullity cured by the lapse of five years. Allen vs. Couret, 24 Ann. 24; Mulholland vs. Scott, 33 Ann. 1045.

It is a mistake to treat this statute as one intended to *cure defects* in tax titles. It is a statute of prescription, barring an action, regardless of the merits or demerits of either title.

We are sensible that this Court has hitherto exhibited hesitation in applying these statutes of prescription in favor of tax titles according to the trenchant principles by which they should be governed; but it is time that such hesitation should cease, and that the clearly expressed legislative will, in the exercise of undoubted legislative power, should be firmly enforced by the courts.

We are, therefore, bound to hold that, as applied to the facts of this case, the prescription of three years bars the plaintiffs' action for the land covered by the tax title.

### III.

It only remains to adjust the claims of the parties for rents and improvements in reference to the tracts of land held by defendants, Geo. T. Wilson and Mrs. Margaret Wilson, and which are awarded to the plaintiff.

The former opinion of this Court (38 Ann. 213) held that these defendants were possessors in good faith. Hence it follows: 1st, that they are not responsible for the revenues except from the date of the institution of the suit; and 2d, that they are entitled to recover the amount expended for their improvements, or a sum equal to the enhanced value of the soil resulting therefrom. C. C. art. 508.

These defendants have called their author, John Burton, in warranty, and have prayed for judgment condemning him as warrantor with a reservation of their right to claim from him the purchase price with damages in a separate action.

Burton has appeared and admitted his obligations as warrantor, and, in case of judgment evicting his vendees, has asked judgment against

plaintiffs for the value of improvements put on the land by him or for the enhanced value of the soil.

These questions have never been passed on by the lower court, and we do not find the evidence in such shape as to enable us satisfactorily to dispose of them. We shall, therefore, remand the case as to these questions.

It is, therefore, ordered, adjudged and decreed that there be judgment in favor of defendants, Mrs. Leonard Edgecombe and Diedrich Wischhusen, maintaining their plea of prescription and rejecting plaintiffs' demand as against them with costs in both courts.

That there be judgment in favor of plaintiffs and against the defendants, George T. Wilson and Mrs. Margaret Wilson, declaring the said plaintiffs to be the true and lawful owners of the property referred to in the petition and more fully described in the separate answers of said defendants and condemning said defendants, respectively, to deliver up the lands so held by them into the possession of said plaintiffs; that the right of plaintiffs to recover the revenues of said properties from the date of institution of this suit be recognized, with the correllative right of said defendants to recover from plaintiffs the amount expended by them in improvements as the enhanced value of the soil resulting therefrom; that there be judgment in favor of defendants and against John Burton, recognizing his liability to them as warrantor of their respective titles, and reserving their right to sue him in a separate action for reimbursement of the price and for damages; that his right to recover from plaintiffs the amount expended by him or his author for improvements or the enhanced value of the soil resulting therefrom be recognized; that the case be remanded to the lower court for further proceedings in order to settle the amounts due on account of rents and improvements between the respective parties; and that the execution of the decree placing plaintiffs in possession of the land in controversy be stayed until after final judgment settling the said questions of rents and improvements; that defendants, George T. Wilson and Mrs. Margaret Wilson, pay half the costs of the lower court and of this appeal, and that the other half be paid by plaintiffs.