## LAND TRUST OF INDIANAPOLIS et al. v. HOFFMAN.

(Circuit Court of Appeals, Fifth Circuit. June 13, 1893.)

### No. 141.

1. **EQUITY JURISDICTION—STIPULATIONS AS TO NATURE OF SUIT—APPEAL.**
   Parties cannot by stipulation convert a case which is essentially a suit in equity to remove a cloud on title, and cancel deeds, records, sales, etc., into an action at law for slander of title; and where such a stipulation has been filed, and trial accordingly had to a jury, an appellate court might well refuse to review the judgment on writ of error.

2. **SLANDER OF TITLE—RECONVENTIONAL DEMAND—PETITORY ACTION.**
   Where, in an action for slander of title under the Louisiana law, defendant admits the slander, and sets up title in himself, the suit thereby becomes a petitory action, in which the burden of proof is thrown on defendant to establish his title.

3. **SAME—PLEADINGS AND PROOF.**
   Where in such case defendant sets up title in himself under a tax deed, plaintiff is entitled to prove, without specially pleading the same, that the taxes for which the sale was made were in fact paid prior to the tax sale.

4. **LIMITATION OF ACTIONS—ACTIONS TO INVALIDATE TAX TITLE.**
   The Louisiana statute, requiring actions to invalidate any title acquired by tax sale to be brought within three years, (Laws La. 1874, Act 105, § 5,) does not apply as against a landowner whose possession has never been interrupted.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.    Affirmed.

Statement by PARDEE, Circuit Judge:

On the 14th of December, 1889, Mrs. Wilhelmina Hoffman, widow of Joseph Bourdette, filed her petition in the civil district court for the parish of Orleans, alleging "that she is the owner, and in possession, of a certain square of ground in the sixth district of this city, designated by the number 27, comprised within State, Bond, Ferdinand streets and the division line of Burtheville;" and further showing that the defendants (plaintiffs in error) claimed to have purchased said property from the Western Land & Emigration Company, a corporation of the state of Indiana, which company bases its pretended claim of ownership on an alleged act of sale from the state of Louisiana, through Isaac W. Patton, state tax collector, before Joseph H. Spearing, notary public, on December 15, 1888, which act purports

to be made by the Western Land & Emigration Company, as pretended transferee of Domingo Negrotto, Jr., who is claimed to have purchased the petitioner's property at a tax sale made for taxes claimed for the year 1878; that defendants have placed on record, in the conveyance office of this city, their pretended title, as aforesaid, and by their claims of ownership, which they constantly make, and by the aforesaid registry, are slandering the petitioner's title; that the existence and registry of the aforesaid pretended titles create a cloud upon the petitioner's title, which should be removed; that the pretensions of the defendants and its transferees are absolutely without foundation, and devoid of merit, because petitioner's property was not assessed at all for the year 1878, and therefore could not be legally sold for the taxes of 1878; that the property claimed to have been sold for said taxes, and purchased by Negrotto and the Western Land & Emigration Company, was the property belonging to Joseph Bourdette, who never owned or had any interest whatsoever in petitioner's before-described property, and, so far as concerns petitioner's property, the aforesaid sale and title of the Western Land & Emigration Company are absolutely null and void, and petitioner denies that the said Negrotto or the said Western Land & Emigration Company ever purchased or obtained a legal title to the property belonging to Joseph Bourdette, all of the pretended proceedings of the tax collector being illegal and void; that her aforesaid property is not worth more than $1,000.

The prayer of the petitioner is "that defendants be cited to answer, that an attorney at law be appointed to represent them, and for judgment restraining defendants from further slandering petitioner's title by setting up any claim of ownership, decreeing their alleged titles null and void, and erasing and canceling the same from the records of the register of conveyance for the parish of Orleans, and for general relief."

On the 16th January, 1890, defendants appeared, filed their petition and bond for the removal of the cause, and the case was transferred to the circuit court, where the record was filed on the 8th of March, 1890. On the same day the record was filed in the lower court, defendants answered, pleading: (1) A general denial to each and every allegation in plaintiff's petition contained, except as may be so far hereinafter specially admitted. (2) Alleged the enactment of the statute known as Act 82 of 1884 by the general assembly of Louisiana. (3) That, in compliance with the provisions of said act, the tax collector of the upper districts of the city of New Orleans did advertise and offer for sale, and, having fulfilled the requirements of said act, did sell and adjudicate unto Domingo Negrotto, Jr., the following described square, to wit, "square 27, sixth district, bounded by Pitt, Jeannette, and State streets and the division line of Burtheville, measuring 217 feet by 300 feet, assessed in the name of Widow Joseph Bourdette." (4) That Negrotto paid the price to the tax collector, who gave him a receipt therefor, together with a proces verbal of sale, entitling him, as adjudicatee, to a deed for said property, as provided by said statutes. (5) That, in compliance with section 4 of said act, the said purchaser did assume to pay, and take said property subject to, all unpaid taxes on the same subsequent to December 31, 1879. (6) That Negrotto, the tax purchaser, transferred, set over, and assigned to the Western Land & Emigration Company all his right, title, and interest in the proces verbal delivered to him by James D. Houston, state tax collector, and Isaac W. Patton, the successor in office of said Houston, did execute and deliver unto the Western Land & Emigration Company a title from the state of Louisiana to said square, as per act, before Spearing, a notary public, on the 15th day of December, 1888, and that on the same day said act of sale was duly registered in the conveyance office of this parish. (7) That the Western Land & Emigration Company paid all the state and city taxes due and owing on said square. (8) That the tax title so acquired by the Western Land & Emigration Company, as transferee of the said Domingo Negrotto, Jr., is, under the provisions of said Act 82 of 1884, § 3, conclusive evidence—First, that the property was assessed according to law; second, that the taxes were levied according to law; third, that the property was advertised according to law; that the property was adjudicated and sold, as recited in said act; fourth, that all

the prerequisites of the law were complied with by the officers, from the assessment up to and including the registry of the deed to said purchas r. (9) That on the 12th day of April, 1889, the Western Land & Emigration Company sold said square to the defendants, and that the same exceeds in value the sum of $2,000.   (10) Defendants, assuming the character of plaintiffs in reconvention, aver that the Land Trust of Ind.am p lis, Louis T. Michener, William J. Richards, and William W. Smith, trustees, are, by virtue of the above-recited act, the true and lawful owners of said square of ground above described, unlawfully withheld and possessed by Mrs. Wilhelmina Hoffman, widow of Joseph Bourdette, entitled to be recognized as owners, and as such put in possession.   They pray that plaintiff's demand be rejected, and that there be judgment in their favor in reconvention, recognizing them as the true and lawful owners of said square, and, as such, put in possession thereof, with costs, etc.

To this answer and plea in reconvention plaintiff filed a general replication.   Subsequently, on 13th of May, 1891, defendants filed, first, the plea of prescription of three years, under section 5 of Act 105 of 1874; and, second, the peremptory exception that plaintiff is absolutely without right to stand in judgment and maintain this suit, and prayed that said exceptions be sustained, and plaintiff's suit dismissed, and for judgment in their favor on their reconventional demand.   Finally, after several continuances, the case came on for trial on the 1st February, 1893.   Up to this time the plaintiff had treated the cause as a suit in equity to remove a cloud upon her title, while defendants regarded it as an action at law for slander of title.   On the day of trial the parties filed a stipulation, in which it was agreed "that this suit be considered and tried as an acti n at law for slander of title, in which defendants, in their reconventional demand, ass rt title and ownership to the land in controversy.   It is further agreed that the value of the property in controversy exceeds the sum of $2,000."   A jury was accordingly impaneled, and the trial of the case was proceeded with on the pleadings as recited.   During the trial defendants below (plaintiffs in error) took three bills of exceptions, one to the admission of certain testimony and evidence, and the remaining two to the charge of the judge to the jury. From an adverse verdict and judgment defendants sued out a writ of error, and assigned error as follows:

First.  The court erred in admitting the evidence offered by plaintiff for the purpose of proving payment of the tax of 1878 upon the property in controversy, and for which said property was sold by the tax collector, because said testimony and evidence were irrelevant, and not responsive to the pleadings, and because, no plea of payment having been filed by the said plaintiff of the tax of 1878, for which the property in controversy was sold by the tax collector, no evidence tending to show payment of said tax was admissible, as stated in bill of exception No. 1, pp. 32, 33, 34, 35, 36, 37, 38, 39, 40.

Second.  That the court erred in refusing to charge the jury that plaintiff's action was prescribed by the lapse of three years, under section 5 of Act 105, approved March 28, 1874, which requires that "any acti n to invalidate the titles to any property purchased rt tax s le, under and by virtue of any law of this state, shall be prescribed by the lapse of three years from the date of such sale."   And the court erred in holding and ruling, and instructing the jury, that "the plaintiff being in possession, and her possession never having been interrupted, the defendant, plaintiff in reconvention, must recover upon the strength of his title, and that the provision with reference to prescription did not apply to such a case," as stated in defendant's bill of exception No. 2, pp. 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57.

Third.  That the court erred in refusing to charge the jury "that they could not consider and must ignore the testimony and evidence and all evidence tending to show payment of the state tax for the year 1878 for which the property in controversy had been sold and adjudicated by the tax collector, because, under the plea of the general issue, evidence of payment could not properly be received or considered; that the plea of payment is a

peremptory exception, going to extinguish the action, and which the Code of Practice of Louisiana requires to be expressly and specially pleaded, and, no plea of payment having been filed by the plaintiff in this cause of said tax for the year 1878, for which the property in controversy was sold and adjudicated by the tax collector, all evidence tending to show the payment of said tax must be entirely ignored, and not considered by the jury; that the jury were without power to weigh any testimony or evidence regarding the payment of said state tax for the year 1878, because the same was irrelevant, and not responsive to any of the pleadings in this case."

And the court erred in charging the jury that "if the plaintiff in reconvention recovered, it must be upon the strength of its title, which it had offered, and it is competent for the defendant [the original plaintiff] to establish that the tax, the nonpayment of which was the basis of the title of said plaintiff in reconvention, had been paid before the proceeding which resulted in the tax sale occurred," all as stated in the bill of exception No. 3.

E. Howard McCaleb, for plaintiffs in error.

Geo. Denegre, Walter D. Denegre, and T. L. Bayne, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge, (after stating the facts.) The case made by the pleadings is one where a party in possession seeks to remove a cloud from the title to real estate, and to cancel deeds, records, etc. The suit, therefore, is essentially an equity suit, (Pom. Eq. Jur. § 1398; Story, Eq. Jur. § 692,) and, under the law and practice of the United States courts, should have been prosecuted on the equity side of the court. The decree rendered in the court below, brought up for review, is to all intents an equity decree. We might well, therefore, decline to review this case under the writ of error sued out, and leave the parties to the results of the arbitration by the judge and jury, to which they agreed. Surgett v. Lapice, 8 How. 48; McCollum v. Eager, 2 How. 61; Hayes v. Fischer, 102 U. S. 121; Walker v. Dreville, 14 Wall. 441; Kelsey v. Forsyth, 21 How. 85; Marin v. Lalley, 17 Wall. 14.

Taking the case, however, as the parties by stipulation have tried to make it, and considering it as properly brought to this court for review by writ of error, we will examine the errors assigned. The stipulation of parties is to the effect that this suit is to be considered and tried as an action at law in the courts of Louisiana for slander of title, in which the defendants, in their reconventional demand, assert title and ownership to the land in controversy. Under this stipulation the pleadings, as made by the parties, properly consist of plaintiffs' petition and the defendant's answer in reconvention. The replication filed by defendant in error, plaintiff in the court below, when proceeding on the supposition that the cause was an equitable one, is necessarily to be disregarded, under the agreement made in the case, or, at most, considered as a general denial to the demand in reconvention. "Replications are not permitted by our law, and so all allegations in answer are open to every objection of law and fact, as nonage, coverture, fraud, and the like,

as if specially pleaded. If defendant be surprised, the proper remedy is continuance or a new trial." 2 Hen. Dig. "Pleading V." p. 1155, and cases there cited. In a suit for slander of title, in which the defendant admits the slander, and sets up title in himself, the suit thereby becomes a petitory action, in which the burden of proof is thrown upon him to establish his title. Livingston v. Heerman, 9 Mart. (La.) 714; Walden v. Peters, 2 Rob. (La.) 331; Proctor v. Richardson, 11 La. 186. In the leading case of Livingston v. Heerman, supra, Mr. Justice Porter, for the court, said:

"Now, when a suit is commenced like the present, defendant should do one of two things,—either deny that he said so, which would amount to a waiver of title, or admit the accusation, and aver his readiness to bring suit. In the first alternative the courts would proceed to try the fact whether he had defamed the title or not, and give damages accordingly; in the second, they would order suit to be commenced. This, it appears to me, is the regular course. The object of this law was intended to protect possession; to give it the same advantages when disturbed by slander as by actual intrusion; to force the defamer to bring suit, and throw the burden on him of proving what he asserted. If this course had been pursued here, the defendant Heerman directed to bring suit, in the language of the law, to prove what he said, and the plaintiff relying on it, possession would have been maintained in it until a better right was shown. Instead of doing this, he has chosen to maintain the truth of what he has advanced by stating thereafter the title in his answer, and averring it to be a better one than the plaintiff's. Having done so, I think the court can examine it as well in that answer as if set forth in the petition. It is only, in fact, anticipating the order which the court must have given, and coming forward at once with that title which the court would have directed him to produce in another suit. His adopting this course at his own choice cannot change the mode in which the proof must be adduced. He must make out his title alleged, and cannot take from the plaintiff the advantage which he derives from his possession by varying the form by which he thought proper to make good his claim to the premises."

In the case of Telle v. Fish, 34 La. Ann. 1244, the plaintiff brought a petitory action against the defendants, who called their vendor in warranty. That vendor set up a tax title. Plaintiff thereupon filed a supplemental petition, in which he urged that the tax title was fraudulent, unreal, null, and void. Defendants and warrantor moved to strike out this supplemental petition, and, during the progress of the trial, objected to the introduction of any evidence under the allegations of the petition, on the ground that it was in the form of an answer, or rejoinder to an answer, which is not allowed under Louisiana laws, and objected to all evidence in support of the alleged simulation and fraudulent character of the tax sale. In passing on this objection the court said:

"Construing the allegations in the supplemental petition touching the nullity of the tax sales as a mere means of defense urged by plaintiff, and as of no greater importance than objections advanced orally, we find no error in the ruling of the judge in refusing to strike out the supplemental petition. His ruling on that point, and on all the other objections of defendants and warrantor, hereinabove enumerated, is fully sustained by the decisions in the cases of Hickman v. Dawson, 33 La. Ann. 438; McMaster v. Stewart, 11 La. Ann. 546; Maillot v. Wesley, Id. 467,—in which the right of the plaintiff in a petitory action to meet the title opposed to him, even at tax sale, by all means of attack, as though specially pleaded, has been recognized as a correct rule of practice."

In Maillot v. Wesley, supra, which was an action of revendication, the court said:

"As our law does not permit either a replication or a rejoinder, all matters of defense set up in the answer must therefore be considered as open to every objection, and not as if such objections had been specially pleaded. Thus the plaintiff may resort to the exceptions of nonage, coverture, fraud, violence, and the like, without pleading them, because he is not permitted to reply."

In Hickman v. Dawson, supra, which was a petitory action, in which the plaintiff alleged title and the defendant set up a tax title, the court said:

"In such a case all matters of defense set up in the answer must be considered as open to every objection of law and fact, as if such objection had been specially pleaded. The title which defendant sets up in such an action is presumed to be traversed or resisted in all its vital elements, and is thus open to every attack which might be leveled at it in a direct action in nullity."

The first and third assignments of error in this case, based upon the first and third bills of exception, present substantially the same question, and that is whether the plaintiff in the trial court, under the stipulation of the parties, and in accordance with the practice in Louisiana, (the defendant in reconvention,) was authorized to present and have considered by the jury evidence tending to show that the tax for the year 1878, the nonpayment of which was the basis of the tax title pleaded in reconvention, had been paid prior to the sale for taxes.

It was urged in objection that such testimony and evidence was irrelevant, and not responsive to pleadings, and that, being a plea of payment, under the Louisiana Code of Practice, it must be specially pleaded; but the trial judge overruled the objections, on the ground that the defendants in the original suit, by setting up title in themselves, became plaintiffs in a petitory action, and therefore plaintiff (defendant in reconvention) had the right to prove any fact tending to destroy or impeach defendants' title as though specially pleaded, and to show that the tax for 1878, for which the property was sold by the tax collector, had been paid prior to said sale. The evidence objected to was certainly relevant, as tending to show the absolute nullity of the tax title forming the basis of the reconventional demand, and, under the authorities above given, we are of the opinion that such nullity was not required to be specially pleaded in order to render the evidence admissible. The case is not at all like a suit on a money demand, where payment can only be proved under a special plea, as is well settled in Louisiana practice.

There remains to consider the second assignment of error, which is that the court erred in refusing to charge the jury that plaintiff's action was prescribed by the lapse of three years, under section 5, Act 105, Laws La., approved March 28, 1874, which requires that "any action to invalidate the title to any property purchased at tax sale under and by virtue of any law of this state shall be prescribed by the lapse of three years from the date of such sale." The court refused to give the charge requested, holding that the defendant, the former plaintiff, being in possession, and her possession never

having been interrupted, the plaintiffs in reconvention must recover upon the strength of that title, and that the provision with reference to prescription did not apply to such case.

It is a general rule that the statute of limitations does not run against the party in possession. The particular statute in question was held subject to this rule by the supreme court of Louisiana in the case of Breaux v. Negrotto, 43 La. Ann. 427, 9 South. Rep. 502; McWilliams v. Michel, 43 La. Ann. 984, 10 South. Rep. 11. See, also, Lague v. Boagni, 32 La. Ann. 912; Barrow v. Wilson, 39 La. Ann. 403, 2 South. Rep. 809; McDougall v. Monlezun, 39 La. Ann. 1005-1010, 3 South. Rep. 273. The case of Smith v. City of New Orleans, 43 La. Ann. 734, 9 South. Rep. 773, seems to hold directly the contrary, and that the special prescription in question begins to run from the day of sale. This case, however, cannot be regarded as authority, because a rehearing was granted therein on the ground of conflict with Breaux v. Negrotto, supra, and, pending reargument, the case was compromised and taken out of court. If the case of Smith v. City of New Orleans should be considered as authority, and as overruling Breaux v. Negrotto, we do not see how it will help the plaintiffs in error, because the date of sale in that case, and we think properly, is fixed by the court at the date of the tax collector's deed, and the record of this present case shows that the tax collector's deed to Negrotto was executed on the 15th day of December, 1888, less than three years before the institution of the suit attacking such title.

We note the authorities cited by plaintiffs in error to the effect that in all public sales in Louisiana, whether made by auctioneers, sheriffs, or tax collectors, the adjudication is regarded and treated as the completion of the sale. Rev. Civil Code, arts. 2601, 2617; Baham v. Bach, 13 La. 287; Freret v. Meux, 9 Rob. (La.) 414; Macarty v. Gasquet, 11 Rob. (La.) 270. But we are of the opinion that the principle invoked applies only to actual parties to the sale, and that third persons cannot be affected until after the act of sale is passed, and ought not to be affected until the sale is recorded. See Rev. Civil Code, arts. 2610, 2442. It is difficult to see how an action can be brought to invalidate the tax title before it is made. Of course the party can proceed by injunction to prevent the tax title from being made, but a suit for nullity, or to invalidate the tax title, would be premature before making the same. Besides this, we notice that in Lague v. Boagni, supra, the supreme court of Louisiana held that the prescription in question did not apply in case of absolute nullity in the tax title.

On the whole case, we find no reversible error. The judgment of the circuit court is affirmed, with costs.